# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3725

_____

Michael Sean Gianakos,      *

     *

         Appellant,      *

     *    Appeal from the United States

    v.      *    District Court for the

     *    District of North Dakota.

United States of America,      *

     *

         Appellee.      *

_____

Submitted: November 12, 2008
Filed: March 25, 2009

_____

Before MELLOY, BOWMAN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Michael Sean Gianakos was found guilty of kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1), and sentenced to life imprisonment. We affirmed Gianakos's conviction on direct appeal. *United States v. Gianakos*, 415 F.3d 912 (8th Cir. 2005) ("*Gianakos I*"). Gianakos then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 with the district court,[1] alleging, *inter alia*, ineffective assistance of trial counsel for counsel's failure to object to the trial court's "defective"

_____

[1]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

admonition regarding potential juror misconduct. The district court denied the petition but granted a certificate of appealability on the issue. We now affirm.

## I. *Background*

The background facts in this case are set out in our previous opinion, in which Gianakos appealed his conviction, arguing, *inter alia*, that the district court failed to adequately investigate potential juror misconduct. This court rejected Gianakos's argument and affirmed his conviction. *Gianakos I*, 415 F.3d at 927. Thereafter, Gianakos applied for a writ of certiorari to the United States Supreme Court, which was denied. *Gianakos v. United States*, 546 U.S. 1045 (2005).

Gianakos then filed a petition for habeas relief pursuant to 28 U.S.C. § 2255. In his petition, he raised several grounds for habeas corpus relief, including ineffective assistance of counsel. Relevant to this appeal, Gianakos alleged that two prejudicial failures of counsel effectively denied him a fair trial and an impartial jury in violation of the Sixth Amendment. Specifically, Gianakos contended that counsel failed to object to the trial court's admonition regarding potential juror misconduct and failed to timely move for a mistrial based on this misconduct. Gianakos's claim is based on an incident regarding one of the jurors brought to the trial court's attention at the close of the fourth day of trial. The trial court discussed the incident with counsel the next morning, and the following exchange occurred on the record:

> [THE COURT]: As I understand it, Detective Green was watching the jury during one of the playbacks of a telephone call and believes that he saw one of the jurors turn to another juror and appear to mouth the statement, quote, he's guilty. Close quote. And, Detective Green, is that in effect what you noted or believe you noted?
>
> [MR. GREEN]: That's correct.
>
> [THE COURT]: No hearing; just lip read?

[MR. GREEN]: I did not hear.

[THE COURT]: All right. And you, of course, notified counsel, who, I think, in an excess of caution proceeded to notify defense counsel and notify me.

I don't consider this a matter of great significance. I have a feeling that every jury that's ever been empaneled reaches some conclusions at some point of the case. I will, however, make this record just to establish that this did occur and that it was brought to our attention, and I will chew on them [the jury] when I send them home tonight, once again emphasizing the admonition to maintain an open mind until all of the evidence is received, and further pointing out that should someone have reached a conclusion that no amount of defense testimony could change a conclusion as to guilt or innocence, then, for God's sake, keep it to yourself until the matter is submitted to the jury for deliberation. And that's basically my intention.

***

[DEFENSE COUNSEL]: Your Honor, I would request that you do give a very detailed admonition to the jurors, and with no disrespect intended to the Court at all, I think some people could interpret the way that you've been repeating the admonition as almost kind of winking at the admonition, and I would request, first, that the Court inform the jurors that it's very important not to talk about the evidence. . . . The other thing that I—and this is just a matter of style, and I'm trying to tread lightly here. The other thing that I would request is that you ask the jurors if anyone has made any comments to you that you felt were inappropriate, that you could advise the bailiff of that, and that it would be a responsible thing for a juror to do. There have been cases of jurors, you know, who have kind of lobbied during the trial, trying to lobby other jurors to, you know, reach a conclusion. I don't want that to happen here. So I think it would be appropriate to tell them that if you feel that someone's trying to communicate with you inappropriately, you can advise the bailiff of that, and just leave it at that.

[THE COURT]: I would be glad to say that for someone who's not on the jury.

[DEFENSE COUNSEL]: Well, even if a member of the jury was trying to engage other jurors in a discussion of the case at this point, that would be inappropriate and it would be the right thing for the juror to do, to advise the bailiff so the Court could inquire further.

[THE COURT]: Very well.

Upon conclusion of day five of the trial, the Court issued the following admonition to the jury:

[THE COURT]: Members of the jury, we're going to break now for the weekend, and it becomes really critical that if someone asks you what the case is about, don't tell them, because I don't want you recounting testimony or explaining the parties' positions because that might fix one version or one set of facts in your mind to the detriment of the defense, who have not yet been able to put on the full case.

So I'm going to say to you, again: Don't talk about the case or anyone connected with it until I finally chase you off to the jury room to decide the matter. And if, based on the testimony you've heard so far, any one of you has reached a conclusion as to guilt or innocence and decided that there's no way that can be shaken, if that's happened, don't share it with anybody, unless and until you finally get into the jury room to decide the case; and then that's the time to share those convictions and beliefs. So you're leaving for the weekend, so the previous admonition of the Court is reinforced and made stronger.

Defense counsel did not object to this admonition. At the conclusion of the trial, but before the trial court had given the jury its final instructions and closing arguments had been presented, the issue was revisited.

[DEFENSE COUNSEL]: There is a juror—I think it's juror number 4—. . . who made the comment that we believe—where she mouthed the words "he's guilty" last week during trial. . . . We request that that juror be dismissed. We have an alternate juror. I think that juror has shown

-4-

prejudice, and there is cause to dismiss juror number 4 and have her replaced by the alternate at this point. And we formally move the Court for that relief.

[THE COURT]: Does the government have any position on that? I don't know. It's—I'm not sure that's what happened. It's what the detective indicated he believed he thought he saw.

[PROSECUTOR]: We would oppose that motion, Your Honor. This has been addressed earlier by the Court. We'll leave it at that.

[THE COURT]: Why don't you couple that comment in the alternative, just, again, to protect yourself and protect the record, with a motion for mistrial, if not granted.

[DEFENSE COUNSEL]: Okay. Your Honor, if the Court does decide not to dismiss juror number 4, we do ask for a mistrial.

[THE COURT]: Very good. And now your record is protected on that point, as well.

Every juror received a copy of the trial court's preliminary and final jury instructions. Both sets of instructions were read to the jury by the trial court; each juror had his or her copy of the instructions during the entire trial, including deliberations. The preliminary instructions contained the following:

During the course of the trial, you should not talk with any witnesses, or with the parties, or with any of the lawyers in the case. Please don't talk with them about any subject at all. In addition, during the course of the trial, you should not talk about the trial with anyone else—not your family, not your friends, not the people you work with. Also, you should not discuss the case among yourselves until I have instructed you on the law and you have gone to the jury room to make your decision at the end of the trial. It is important that you wait until all the evidence is received and you have heard my instructions on rules of law before you deliberate among yourselves.

Do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.

The district court rejected Gianakos's ineffective-assistance-of-counsel claim, finding that Gianakos failed to establish prejudice resulting from counsel's failure to object to the trial court's admonition. But the district court did issue a certificate of appealability as to whether defense counsel's failure to object to the trial court's curative admonition constitutes ineffective assistance of counsel.

## II. *Discussion*

According to Gianakos, the trial court's admonition addressing potential juror misconduct effectively shifted the burden of proof. As a result, Gianakos maintains that he was denied his Sixth Amendment right to the effective assistance of counsel because his defense counsel failed to object to the trial court's admonition, thereby prejudicing his right to a fair trial by an impartial jury.

To prevail on a Sixth Amendment ineffective-assistance-of-counsel claim, Gianakos must establish that: "(1) trial counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney, and (2) trial counsel's deficient performance prejudiced the defense." *Armstrong v. Kemna*, 534 F.3d 857, 863 (8th Cir. 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984)). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

"We need not inquire into the effectiveness of counsel, however, if we determine that no prejudice resulted from counsel's alleged deficiencies." *Hoon v.*

*Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002) (citing *Strickland*, 466 U.S. at 697). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Id*. "[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id*. at 695.

Here, Gianakos argues that he was prejudiced because "'[w]hen a juror makes up her mind before hearing all the evidence and thus shifts the burden to the defendant, *the defendant is prejudiced*.'" Appellant's Brief at 20–21 (quoting *Gianakos I*, 415 F.3d at 930 (Bright, J., dissenting)) (alteration and emphasis added in Appellant's Brief). Gianakos also asserts that, when reviewing defense counsel's alleged error in light of the totality of all evidence, a reasonable probability exists that the result of his trial would have been different, as evidence of his guilt is not "overwhelming." First, Gianakos notes another individual, Andrew Betrosian, could have been the victim's killer. Betrosian, the victim's boyfriend and father of her child, was engaged in a custody dispute with the victim at the time of her death and had threatened to "shoot Annie in the head" in connection with the court action. Additionally, tire tracks measured at the crime scene were consistent with Betrosian's vehicle and inconsistent with Gianakos's vehicle. Second, Gianakos also points out that Jamie, Gianakos's wife, received a reduced sentence for her cooperation in the case and that her trial testimony that the victim was first shot from behind was not consistent with forensic findings. Finally, Gianakos notes that, in his case-in-chief, he

presented six alibi witnesses who testified that they had seen Michael or spoken with him at his parents' home at approximately the same time that the murder occurred.

We first address whether Gianakos has established prejudice from defense counsel's failure to object to the trial court's admonition regarding *potential* juror misconduct. We say "potential" misconduct because no definitive determination was ever made that *actual* jury misconduct even occurred, requiring such an admonition. The record only establishes that Detective Green "believed" that he saw one of the jurors mouth the statement "he's guilty" to another juror. Detective Green affirmatively stated that he "did not hear" the jurors' conversation. Thus, the trial court issued the admonition out of an abundance of caution. If the trial court's defective admonition caused no prejudice to Gianakos, then we need not proceed to an analysis of counsel's alleged deficiencies. Our review of the record leads us to conclude that Gianakos has not shown prejudice from the court's jury admonition.

First, while "[w]e acknowledge that the district court's admonition did not accurately state the law," as "[a]n accurate statement of the law would have instructed the jury not to reach a conclusion until all the evidence was presented," the instruction "was sufficient to achieve its principal aim, which was to remind the jurors not to prematurely discuss the case among themselves." *Gianakos*, 415 F.3d at 922 n.5.

Second, while "[j]urors should clearly abstain from communicating to one another about a case before instructed to begin deliberations by the trial court," "when there are premature deliberations among jurors with no allegations of external influence on the jury, the proper *process* for jury decision making has been violated, but there is no reason to doubt that the jury based its ultimate decision only on evidence formally presented at trial." *Id.* at 921–22 (emphasis in original). No allegations of external influence on the jury exist in the case; therefore, we have no reason to doubt that the jury ultimately based its decision solely on the evidence presented at trial.

Third, even though the trial court's admonition regarding potential juror misconduct was not an accurate statement of the law, the trial court repeatedly and correctly admonished the jury not to talk about the case until it had heard all of the evidence. The trial court gave such admonitions at every break, and every juror received a copy of the trial court's preliminary and final jury instructions. The trial court read both sets of the instructions to the jury, and each juror had access to his or her copy of the preliminary instructions during the entire trial, including deliberations. These instructions made clear that the government bore the burden of proving Gianakos's guilt beyond a reasonable doubt. "A jury is presumed to follow the instructions given." *In re Prempro Prod. Liab. Litig.*, 514 F.3d 825, 832 (8th Cir. 2008). Given that the trial court's inaccurate admonition about juror misconduct was never repeated and was largely subsumed by the repeated proper instructions, we presume that the jurors followed the correct instructions.

Fourth, despite Gianakos's argument to the contrary, ample evidence supports the jury's guilty verdict, including the following evidence identified by the trial court and the district court: (1) Gianakos purchased a 12-gauge shotgun at a pawn shop shortly before the murder and participated in the purchase of ammunition, wine coolers, and the medication used to poison the victim. (2) Gianakos was aware of the location and condition of the abandoned farmstead where the killing took place, having participated in the theft of a radiator core from an old truck located on the site several years earlier. (3) The body of the victim was dragged along the ground to the place where it was found. The victim was a large person and expert testimony opined that someone of Jamie Gianakos's small size could not have moved the body without assistance. (4) The recorded telephone conversations—the fact of the recordings being known—contained continued references of "although we are innocent"—"if nobody talks everyone walks." (5) The bizarre circumstances leading to the shift of the focus of the investigation to Gianakos and Jamie, his wife, which was Gianakos's recital of the details of the murder as allegedly contained in the "notebook." No notebook was found and the details were too accurate to be imagined. (6) Jamie Gianakos, despite

the rigorous and able cross examination of defense counsel, gave detailed, coherent testimony of Gianakos's actions and including his finding a tooth of the victim stuck to his shoe upon arriving home after the killing. (7) No credible connection between Betrosian and Jamie Gianakos was ever established. (8) Gianakos and Jamie had collaborated on the Super 8 Robbery. (9) Gianakos telephoned his parents, who then contacted law enforcement regarding the "notebook." Gianakos revealed that he knew the victim had been poisoned and that her throat had been cut. Such information was not public knowledge and the poison had gone undetected by the medical examiner. (10) Jamie Gianakos's testimony was consistent with what she told fellow inmate Linda Bay in October of 1999. (11) Gianakos knew how to use a shotgun. Jamie Gianakos did not. Yet he testified that although he bought the shotgun for Jamie he did not go with her to show her how to use it.

### III. *Conclusion*

Having concluded that the district court properly denied Gianakos's petition for habeas relief, we affirm the judgment of the district court.

_____